UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| JOSEPH DUKES | * | NO: 18-564 |
| --- | --- | --- |
| | * | |
| VERSUS | * | SECTION: H |
| | * | JUDGE SARAH S. VANCE |
| CROSBY TUGS, L.L.C. | * | MAGISTRATE: 4 |
| | * | JUDGE JANIS VAN MEERVELD |

*****************************************************************************

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Plaintiff, Joseph Dukes, respectfully submits that Defendant, Crosby Tugs, LLC ("Crosby Tugs"), cannot meet all three factors of its purported *McCorpen* defense against maintenance and cure claims asserted in this case. Unless it is able to meet all factors, Crosby Tugs is not entitled to partial summary judgment on maintenance and cure. As it has not met its burden showing that Mr. Dukes's back pain complaints from over thirty years before his workplace injury in 2017 was material to its decision to hire him or that it is sufficiently related to his current injury, Crosby Tugs cannot have Plaintiff's claims for maintenance and cure dismissed.

## FACTUAL BACKGROUND

Plaintiff was hired by Crosby Tugs in 2009 as a deckhand. As part of the application process, he filled out paperwork setting forth his medical history. In one of the medical questionnaires provided by Crosby Tugs, Mr. Dukes was asked whether he suffered from one of 88 different conditions, and any limitations associated with those conditions, one of which was "recurrent neck or back pain," to which he responded "No."[1] In Crosby Tugs' documents provided to the Court with the Motion for Partial Summary Judgment, at Exhibit A, a Functional Capacity

---

[1] Exhibit A, p. 5, to Crosby Tugs' Motion for Partial Summary Judgment, R. Doc. 14-2.

1

Evaluation was performed by Complete Occupational Health Services on December 14, 2009 for the "Deckhand" position. While the summary of the evaluation appears to have been redacted, it is more than likely that Mr. Dukes passed any functional testing and evaluation required by Crosby in order for them to ultimately hire him as a deckhand in 2009.[2]

In his deposition, Mr. Dukes testified that he suffered back pain for a brief period in 1978, when he was in the military.[3] He described it as "bruised muscles," for which he was placed on light duty for two weeks, and then returned to work.[4] When asked about any other back pain he suffered between that 1978 incident and his October 30, 2017 accident on which this lawsuit is based, Mr. Dukes responded that he had "probably" pulled muscles in his back at some point, and that he had seen a chiropractor a few times over the last thirty years.[5] When asked how often he visited a chiropractor, Mr. Dukes estimated that he had seen a chiropractor "about fifteen times…during my lifetime."[6] In those treatments, Mr. Dukes reported generalized lower back pain, for which an x-ray was performed in November 2012. That x-ray showed narrowing at L3-4, and "well maintained" disc space at L4-5. At L5-S1, there was "no narrowing" noted of the disc space.[7]

Before the occasional chiropractic treatment Mr. Dukes reported, he also saw the medic while serving in the armed forces over thirty years ago for "mechanical back pain" complaints.[8] Contrary to Crosby Tugs' assertion in its supplemental memorandum in support of its motion, he did not report a history of back trauma in the last 72 hours in 1985. Rather, it was just back pain that was classified as a "dull ache" for a couple of weeks, and for which no treatment other than

---

[2] Functional Capacity Evaluation of December 14, 2009, attached as Exhibit 1.
[3] Deposition of Joseph Dukes, October 2, 2018, attached as Exhibit 2, at p. 28.
[4] *Id*.
[5] Dukes Dep. at pp. 30-31.
[6] Dukes Dep. at pp. 31-32.
[7] Institute of Diagnostic Imaging Report of November 27, 2012, attached as Exhibit 3.
[8] Military Records Excerpt, attached as Exhibit 4, at p. 3.

rest, ice, and an over the counter analgesic was prescribed.[9]

Mr. Dukes was able to work for years for Crosby Tugs without any problems or serious back pain complaints until the morning of October 30, 2017. On that date, Mr. Dukes was working to secure a barge to the CROSBY 11 dredge and, when he was working to secure the ropes, he felt a pop in his lower back.[10] He immediately felt pain in his lower back and down his left leg, and returned to the boat to report the incident to his captain.[11] Mr. Dukes received medical treatment from local providers in Florida, and then began seeing Dr. Bartholomew in the New Orleans area for treatment for his lower back and left leg pain.

Dr. Bartholomew noted that, while Mr. Dukes had seen a chiropractor in the past for "intermittent low back soreness," he never before had left leg symptoms, and this was now a "constant pain."[12] A December 2017 MRI taken after Mr. Dukes's workplace injury showed severe stenosis and a "large" left-sided herniation at L4-5, which included compression of the L5 nerve root.[13] These were not problems seen on prior imaging. A microdisectomy was recommended at L4-5, and performed on June 25, 2018. Mr. Dukes continues to recover from that procedure, and has been recommended to undergo work hardening.[14]

## LAW AND ARGUMENT

### I. MAINTENANCE AND CURE

A seaman is entitled to maintenance and cure when he becomes injured while in a ship's service and this right continues until he has reached maximum medical improvement. *Silmon v. Can Do II*, 89 F.3d 240 (5th Cir. 1996). The obligation to pay maintenance and cure is independent

---

[9] Ex. 4 at p. 1.
[10] Crosby Tugs Personal Injury or Illness Report, attached as Exhibit 5.
[11] Dukes Dep. at p. 74.
[12] Dr. Bradley Bartholomew report of February 1, 2018, attached as Exhibit 6.
[13] Orthopedic Associates Report, dated December 18, 2017, attached as Exhibit 7, at p. 3.
[14] Dr. Bartholomew report of November 13, 2018, attached as Exhibit 8.

of tort law. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008 (5th Cir. 1994). The right to maintenance and cure is broad and the burden of proof relatively light since recovery is not based on negligence or fault. *Freeman v. Thunder Bay Transportation Company, Inc.,* 735 F.Supp. 680 (M.D.La. 1990). Because the duty of maintenance and cure exists for the benefit of seaman, courts must be "liberal in interpreting this duty for the benefit and protection of seaman." *Vaughan v. Atkinson*, 369 U.S. 527 (1962).

Further, liability for maintenance and cure "is among the most pervasive of all" and "is not to be defeated by restrictive distinctions not narrowly confined." *Id.* The amount and duration of maintenance to which a seaman is entitled within the limit of the rules is, therefore, usually a question of fact. *Caulfield v. AC & D Marine,* 633 F.2d 1129 (5th Cir. 1981). Any ambiguities or doubts must be resolved in favor of the seaman. *Id.* Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.,* 396 F.2d 547, 548 (5th Cir. 1968).

Yet, there is a "general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner." *Id.; Bodden v. Professional Divers of New Orleans, Inc.,* 2001 WL 1223589 (E.D.La.2001). However, for an employer to rely on this legal defense—known as the *McCorpen* defense—to deny the seaman's maintenance and cure claim, the employer must establish: (1) that the seaman-plaintiff has intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage. *Id.; see also Brown v. Parker Offshore Drilling,* 410 F.3d 166, 171 (5th Cir. 2005).

"Because the employer bears the burden of proving each prong of [the *McCorpen*]

affirmative defense at trial, the burden on the employer at the summary judgment stage is to demonstrate a lack of disputed issues of material fact with respect to each prong." *Luwisch v. American Marine Corp.*, 2018 WL 3111931, *1 (E.D. La. 6/25/18). There is a triable issue of fact when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries. *Id*.

2. **PLAINTIFF DID NOT INTENTIONALLY MISREPRESENT OR CONCEAL RELEVANT MATERIAL FACTS.**

Crosby Tugs has presented no evidence that Mr. Dukes intentionally misrepresented his condition in order to obtain his job with Crosby Tugs. While he reported to undergo occasional chiropractic treatment, it was very sporadic treatment, and was not a condition that in any way prevented him from performing his job. There is no evidence that Plaintiff had any limited mobility, activity restrictions, or difficulty performing his job duties before his work accident. As such, he had "reasonable grounds for his good faith belief that he was fit for duty." *McCorpen,* 396 F.2d at 549. In fact, Plaintiff passed the physical evaluation Crosby Tugs asked of him, including a functional capacity evaluation, and proceeded to work for Crosby Tugs for many years without any physical problems until the October 30, 2017 incident at issue in this case.

Defendant is seeking to severely limit a seaman's right to maintenance and cure by demanding that he complete pre-employment medical forms with the mindset of a doctor or lawyer and report every bump, bruise, strain, sprain, ache and pain from which he has ever suffered, regardless of whether that prior injury is even related to the later injury. The Fifth Circuit never meant to restrict maintenance and cure in such a way. Instead, the goal was to prevent those seamen who were obviously defrauding the employer about a prior injury from receiving maintenance and cure for an injury that clearly was not caused by an accident aboard the vessel. In fact, the Fifth Circuit in *Brown* stated:

> Employers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees. This is the purpose of the preemployment health questionnaire, and of the *McCorpen* defense. Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury.

*Brown v. Parker Offshore Drilling,* 410 F.3d 166, 171 (5th Cir. 2005). The *McCorpen* defense should not be wielded like a sword, but rather as a shield to prevent a manifest injustice.

In *McCorpen*, the plaintiff was "well aware of the serious, ongoing and long term nature of his diabetic condition." Here, Mr. Dukes suffered from minor back pain prior to applying to work with Crosby Tugs. Whether minor back pain that Mr. Dukes experienced before his application, and which resolved with very limited treatment is something that Plaintiff should have disclosed is a determination for the jury, as it is questionable whether it is such a "***serious*** medical problem(s) that should be revealed by the person afflicted whenever he is asked about past illnesses by an examining physician" or "***insignificant*** ailment(s) akin to a cold." *See Gregory v. Kirby Inland Marine*, 2009 WL 1402229 (E.D.La. 2009)(emphasis added). It certainly was not a "serious, ongoing long term" condition that was the subject of *McCorpen*. It is this type of condition that this defense is aimed at, not a minor sprain that resolved itself without the need for extensive or serious medical treatment.

In this case, whether Plaintiff misrepresented his medical history is a credibility issue that should be left to the determination of the jury. This is simply not a case that calls for a strict application of the *McCorpen* defense to strip Mr. Dukes of his right to maintenance and cure. The evidence in this case, viewed in a light most favorable to Plaintiff, does not support that Plaintiff intentionally concealed his back pain, for which he had received intermittent chiropractic adjustments over the years before his October 2017 injury. A jury could reasonably find that plaintiff had no such intent to conceal or misrepresent his prior pain.

### 3. THERE ARE ISSUES OF FACT AS TO WHETHER THE ALLEGEDLY MISREPRESENTED OR UNREPORTED MEDICAL HISTORY WAS MATERIAL TO CROSBY TUGS' HIRING DECISION.

When "an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation." *Smith v. Diamond Services Corp.*, 2015 WL 5559820 (E.D. La. 2015). Under such circumstances, "[a] triable issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Id.*

In support of this prong of a *McCorpen* defense, Crosby Tugs makes two arguments. First is its blanket assertion that, simply because a form asks about any and all conditions from which an applicant has suffered or currently suffers, it is to be automatically deemed a "material" factor in whether a person is hired by the company. There is no evidence presented by Crosby that these pre-employment questionnaires have any effect on the decision to hire an employee, such as a company manual or any written policy or procedure stating this as a fact.

Its second argument is based on the unsworn declaration of its QHSE Director. The Declaration claims that knowledge of back pain from over twenty years before his application date would have been "material" to the decision to hire Mr. Dukes. This self-serving declaration states only that disclosure of "prior extensive treatment" for lower back pain "would have been material" to the decision to hire Mr. Dukes, without stating how it would have been material other than "inquir[ing] further" about the prior complaints.[15]

In his deposition, Mr. Dukes testified that he was able to do his job, without complaint, and for years at a time. He also testified that he had only seen a chiropractor for lower back pain

---

[15] R. Doc. 14-2.

approximately fifteen times over the course of his lifetime.[16] Even from Crosby Tugs' self-serving Declaration, a pre-existing condition alone does not appear to mean a potential employee will not be hired. Mr. Savoy simply said that they would have inquired further without anything else. As an FCE was performed before hire, it is unclear what else would have been done. Even imaging performed three years later of Plaintiff's lumbar spine showed no problems at the L4-5 level, the level which was injured on October 30, 2017. Plaintiff worked for Defendant without difficulty many years, and there is no evidence that he was unable to perform his job duties until the incident at issue. As Crosby Tugs admits, the questionnaires are designed to obtain information about a worker's ability to work as a deckhand. Plaintiff provided Crosby Tugs with accurate information about his ability to work as a deckhand, and he lived up those abilities for years until he was injured because of the Defendant's negligence.

Whether a non-disclosed injury is material for the purposes of a *McCorpen* defense is an issue of fact, and where there are questions of whether the seaman would have been employed even had he made the requested disclosure, summary judgment is not appropriate. *Cal Dive Intern., Inc. v. Grant*, 2013 WL 1099157 (E.D. La. 2013). Like in *Cal Dive Intern*, there is a genuine issue of material fact as to whether Plaintiff's alleged non-disclosure was material for purposes of the *McCorpen* defense. The evidence, viewed in a light most favorable to Plaintiff, does not support materiality. A jury could reasonably find that even if Plaintiff intentionally concealed a prior injury, it was immaterial to his being hired by Crosby Tugs, given their requirement that he complete a physical functional examination prior to hire and overarching fact that he was able to work for *years* without any problems at all until this last incident in October 2017.

In *Luwisch v. American Marine Operators*, another division of the Court denied an

---

[16] Dukes Dep. at pp. 31-32.

employer's *McCorpen* motion for summary judgment because the employer submitted no evidence other than the declaration and deposition of the company's president to prove the plaintiff would not have been hired if the employer had known of the plaintiff's pre-existing degenerative disc disease. 2018 WL 3111931, at *3. The employer did not submit its official human resources documentation explaining hiring practices with regard to applicants with pre-existing conditions. The employer also did not present deposition testimony of any medical professional opining that they would not have cleared the plaintiff for work if they had known of his condition. *Id*. Without those, Judge Morgan found that there was insignificant proof to support the employer's claim that the non-disclosure was material to the decision to hire the plaintiff.

Plaintiff submits that *Luwisch* is very instructive here. As in *Luwisch*, Crosby Tugs has failed to carry its summary judgment burden with respect to the materiality prong. As in *Luwisch*, Crosby Tugs has only submitted the declaration of Mr. Savoy, who made just a single blanket statement that Crosby Tugs would have "inquired further" to determine Mr. Dukes' employability had Mr. Dukes reported highly sporadic chiropractic treatment, or a two week back pain issue suffered in 1987. Defendant has failed to provide anything from its human resources manuals or policies regarding its hiring practices with regard to applicants with pre-existing conditions. Further, as in *Luwisch*, Crosby Tugs has not proffered any medical professional opinion that Mr. Dukes would not have been cleared for work at Crosby Tugs if they had known of these limited historical back pain complaints, which it likely cannot do, given the years that passed between his initial complaints and hire, and his hire and ultimate injury. When it is "unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries," triable issues of fact exist. *Hare v. Graham Gulf,* 22 F. Supp. 3d 648, 654 (E.D. La. 2014). That is the case here and, accordingly, Plaintiff submits that summary judgment should be

9

denied to Crosby Tugs on its *McCorpen* defense.

    **4. THERE ARE ISSUES OF FACT AS TO WHETHER THERE IS ANY CONNECTION BETWEEN THE PRIOR PAIN COMPLAINTS AND THE DISABILITY WHICH HAS OCCURRED AS A RESULT OF PLAINTIFF'S WORK WITH CROSBY TUGS.**

There is no evidence of any connection between the "mechanical" back pain which Mr. Dukes was noted to have in the fall of 1985 and his 2017 injury. There is also no evidence of any connection between his stated fifteen or so chiropractic treatments over his lifetime before October 2017. The *McCorpen* defense applies only when there is a "connection between the withheld information and the injury which is eventually sustained." *Parker v. Jackup Boat Service, LLC*, 542 F.Supp. 2d 481 (E.D. La. 2008). As courts have explained, this means: "[i]n other words, the employer must show that there is a likelihood that the new injury is in fact a manifestation or an aggravation of the old injury." *Johnson v. Cenac Towing, Inc.*, 599 F.Supp. 2d 721, 727 (E.D. La. 2009) (internal citations omitted). "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." *Id*. However, injuries that are unrelated—that is injuries which lack the required connection—are insufficient to support a *McCorpen* defense:

> After all, proof that the first injury and the second injury affected the same body part does little to establish that one injury caused the other, or that the plaintiff's concealment caused the second injury. The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes.

599 F.Supp.2d at 728-29 (E.D.La. 2009) [internal citations omitted].

Despite Crosby Tugs' assertion to the contrary, it should not be sufficient to establish that the old and new injuries occurred in the same general location of the body. For example, a prior meniscus tear has no connection to a later fracture of the patella just because they both affect the knee. Moreover, case law does not support such logic. In *Brown v. Parker Drilling*, the court found a connection only when the two injuries "were to the same location of the [plaintiff's] lumbar spine. 410 F.3d 166 (5th Cir. 2005). In *Jauch v. Nautical Services*, the court applied *McCorpen*

10

when the plaintiff's new back injury was "virtually identical" to his prior injury. 470 F.3d 207 (5th Cir. 2006). Likewise, the court in *Noel v. Daybrook Fisheries*, 213 F.3d 637 (5th Cir. 2000), held that a *McCorpen* defense was viable because the two injuries were *to the same disk.*

These are very clearly different injuries. At most, Mr. Dukes had some mechanical back pain in the past, at mild to moderate levels, which required an occasional "adjustment" with a chiropractor and was associated with a different disc entirely. On October 30, 2017, Mr. Dukes distinctively felt that "something popped" in his back, and then had left leg pain immediately thereafter.[17] Imaging showed that L4-5, a disc before which was "well maintained," had a large herniation and caused new radiating pain and symptoms for which surgery was recommended and performed. There are genuine issues of material fact as to whether there is a connection between Mr. Dukes' prior mechanical back pain symptoms, as Plaintiff submits that a jury could reasonably conclude "that the earlier injuries are not identical or substantially identical." *See Jenkins v. Aries Marine Corp.*, 590 F.Supp.2d 807, 813 (E.D. La. 2008).

In *Jenkins*, the court noted that:

> To find the requisite "connection," courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body. *See, e.g., Olympic Marine Co. v. Credeur,* 1992 WL 345322, at *3 (E.D.La.1992) (causality not established when prior and present injury not "identical or similar"); *Weatherford v. Nabors Offshore Corp.,* 2004 WL 414948, at *3 (E.D.La.2004) (causality established when both injuries caused "sharp, stabbing pain" in lower back); *Fox v. Plaquemines Parish Gov't,* 1999 WL 1243065, at *3 (E.D.La.1999) (causality established when both injuries were to L5-S1 disc); *Guillory v. Northbank Towing Corp.,* 1993 WL 721991, at *3 (W.D.La.1993) (causality established when both injuries were to L4-L5 discs); *Keys v. Halliburton Co.,* 1989 WL 54224, at *3 (E.D.La.1989) (causality established when both injuries caused pain in lower back).

*Id.*

---

[17] Dukes Dep. at p. 74.

This is not the same condition as was the case in *Brown v. Parker Drilling Offshore,* 410 F.3d 166 (5th Cir. 2005). In that case, the prior condition at issue was an alleged injury to the same part of the lumbar spine that the plaintiff suffered at work with Parker Drilling. That case did not hold that simply a prior injury or prior pain in the spine generally was enough to allow the employer to claim a *McCorpen* defense. Rather, it was injuries to the same level of the lumbar spine that rendered those prior injuries causally related to the new injuries alleged in the suit against Parker. Indeed, the cases cited by the *Brown* court made clear that the same level of the spine must have suffered prior injury in order for *McCorpen* to apply. *See Weatherford, supra*; *Fox v. Plaquemines Parish, supra*.

Even in yet another case concerning this issue, *Luce v. C&E Boat Rental*, 2010 WL 4553509, 2011 AMC 1735 (E.D. La. 2010), the exact same level of the spine was implicated in the employer's eventual *McCorpen* defense. The court there also cited to the language from *McCorpen* and *Brown,* stating that "it is enough to show that the old and new injuries were to the **same location of the plaintiff's lumbar spine**." *Luce*, 2011 AMC at 1747 (emphasis added). In this case, there is no reliable evidence that Mr. Dukes's current complaints are in the same location of the lumbar spine, rendering *McCorpen* inapplicable. Indeed, the imaging evidence available shows that the October 2017 injury is new and different from the prior spinal level and problems presented.

When examining spinal injuries and the causal connection requirement of *McCorpen*, courts consistently hold that the causal connection is met only when the prior injury is at the same level of the spine as the current injury. This does not mean that a prior general "spinal injury" renders "lumbar injury" subject to *McCorpen*. Rather, it means that a prior injury **at the exact same level of the spine** renders an injury causally connected**,** i.e., a prior injury to L4-5 renders a

12

later injury to L4-5 subject to a *McCorpen* defense. It must be the "same location of the spine," not the same general area of the spine. *Johnson v. Cenac Towing, Inc.*, 599 F.Supp.2d 721, 728-29 (E.D. La. 2009); *See also Annaloro, supra* (holding that the causal connection was met when the plaintiff "had a prior back injury at L4-5, the same location of the lumbar spine allegedly injured in the accident at issue").

The medical evidence in this case does not and cannot establish that Plaintiff's prior mechanical lower back pain complaints are connected in any way to his very clear traumatic lumbar spinal injury from which he suffered while working on October 30, 2017. Crosby Tugs relies on military medic visits made over thirty (30) years before the incident at issue, and Mr. Dukes's testimony that he saw a chiropractor "about fifteen times…during my lifetime" in order to assert that his prior "back pain" complaints are so connected to his post-accident complaints of lower back pain, stiffness, and leg pain and weakness to render it entitled to take a *McCorpen* defense.[18] This should not be allowed here.

The cases do not hold that *any* injury to *any* part of the spine renders any subsequent injury to any other part of the spine causally related and subject to a *McCorpen* defense when other factors are met. What Crosby Tugs requests is summary judgment on a defense that it cannot meet, because Mr. Dukes's vague complaints of back pain and highly sporadic chiropractic visits over the last thirty-plus years (approximately fifteen, to his estimation) do not show a causal link with the clear L4-5 injury he sustained on October 30, 2017. Indeed, even prior imaging does not support Crosby Tugs' position. Defendant seeks to stretch the original intent of *McCorpen* far beyond what it was ever intended to do, and to take away Plaintiff's right to maintenance and cure on such a vague set of records and information would be a travesty. For these reasons, Plaintiff

---

[18] Dukes Dep. at p. 31-32.

respectfully submits that Crosby Tugs' Motion for Partial Summary Judgment be denied.

## CONCLUSION

Plaintiff respectfully submits that Crosby Tugs, L.L.C. has not established that there are no genuine issues of material fact on the *McCorpen* factors that would entitle it to partial summary judgment on maintenance and cure. Specifically, the materiality component of any such defense has not been met by the summary and self-serving statements in the affidavit of Crosby Tugs' QHSE Director, statements which are not supported by any other evidence in the record. Further, the evidence clearly shows that the injury which Mr. Dukes reported suffering on October 30, 2017 is not causally related to the prior back pain complaints for which he had received intermittent treatment over a thirty year time period. For these reasons, and all others set forth herein, Plaintiff respectfully requests that Defendant's Motion for Partial Summary Judgment be denied.

Respectfully Submitted,

*/s/ Megan C. Misko*
TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
**THE YOUNG FIRM**
400 Poydras Street, Suite 2090
New Orleans, LA 70130
Telephone: (504) 680-4100
Facsimile: (504) 680-4101

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system this 8th day of January, 2019. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system and/or U.S. Mail or

electronic means.

                                                                               */s/ Megan C. Misko*  
                                                                               MEGAN C. MISKO